I would like to reserve two minutes for rebuttal. I would like to make three main points today. Number one, to acknowledge, it's a pretty egregious case. This was one of the most highly publicized homicide cases in the last 25 years in Michigan. And there's no claim being made today and no claim that was ever made that Mr. Grant was not criminally responsible for both the death of his wife and the dismemberment of her body. A trial was the degree of what homicide had occurred in this case, and that's why his statement was so critical to the decision the jury had to make in this case. The second point I want to make is something that every time I've argued this case, it's been misconstrued. It was misconstrued in Judge Lawson's decision in the district court. There is no claim being made, either today or at any time in this case, that a defendant, where there is an agreement between the defendant and the police of no interrogation, as there was in this case, that a defendant cannot, on his own, his or her own, voluntarily and knowingly waive that agreement. Do you have authority for that proposition? Well, I'm just stating that it's, a criminal defendant can waive any fundamental constitutional right. You can waive your right to counsel. You can waive your right to remain silent. You can waive your right to jury trial. You can waive your Fourth Amendment rights. All I'm saying is that once there's an agreement reached that the defendant can, on his or her own, initiate voluntarily, initially say, I no longer want to be part of the agreement. I want to disavow that agreement. Had Mr. Grant, post-custody, when he was arrested, taken into the emergency room, had he immediately told the police, I know, I want to talk to you. I want to make a statement. And they would have responded, well, we need to contact your attorney. If he would have said that, no, I'm sorry. I want to make a statement. I'll waive my right to counsel. I'll waive my right to remain silent. I want to make a statement. That would have been absolutely fine. There would have been no problem at that point. That's not what happened here. Just as the defendant in the Brewer case. If the defendant in the Brewer case had been sitting in the back of the patrol car, driving through Iowa, back to where he was going to be in custody, and he had spoken up, and he had said to the police officers in the front seat, I want to tell you what happened. I did kill this girl. I want to tell you where her body is. And the police officers would have said, I'm sorry, we're not allowed to talk to you. And he would have said, I still want to talk. I want to waive that. So here then, presumably, the dot, dot, dot following your initial concession is that he didn't do that. The attorney backed out of the agreement, in a sense, by saying, I no longer represent him. Isn't that your issue? That is the position the prosecution took, and the police. That when Mr. Grime went on local television, I mean, this is sort of unprecedented. I've never seen an attorney go on TV. The whole thing is a little strange, but you also have the alleged attorney for a fugitive saying, you know, I'm the guy who's representing him, et cetera, talk to me. Well, he went on TV. According to him at the hearing, which is ridiculous, number one, to say he was trying to send a message to his client that he wanted to withdraw his counsel. Well, number one, he had given the information to the police through Mr. Grant's family, where they could probably find him in northern Michigan. He was appearing on local Detroit TV. That didn't make any sense. I think we know the facts. In any event, what happens here, and tell me if I'm misstating it or overstating it, is that first, you know, the guy is in emergency room intensive care during a certain period of time, so nobody's going to be calling any lawyers during that time. And they say, you know, when he says, I want to talk to Grime, he says, you know, Grime isn't representing you. We'll get you another lawyer. And what are they supposed to have done at that point? Well, I mean, that seems to be the proper thing to do. You know, they wait until he's relatively compensamentous, and then after he gets out of the emergency room, and they say, you know, your guy says he's not your lawyer. We'll get you another lawyer. I agree. There is no Edwards v. Arizona error in this case. What the police did, the police at the hospital, everything they did beyond their point in time was fine. They did exactly what they were supposed to do. Once he asked to speak to his attorney, they stopped the interrogation. He re-initiated. There's no Edwards claim that's ever been made in this case because there's no Edwards error here. The error precedes that. When you just said there was no time to contact counsel, that's absolutely untrue. Mr. Grime had been in custody for more than three hours prior to Mr. Grime going on television. The police officers, Captain Wickersham, the police officers readily knew that he was in custody. They had one of their own officers there prior to the arrest with him in the hospital. He was in custody in the hospital in treatment. Yes. But that's not really... Am I misstating that? No, no, no, that's fine. But back here, back in Macomb County, hundreds of miles away, the police officers who had made the agreement knew he was in custody. There was no doubt about the fact that they knew he was in custody from the minute he was arrested because their own people were up there. Then if they had done what I take it you say they should have done, which was call Mr. Grime immediately and say, we got your man, he's in the emergency room, what do you want to do? Mr. Grime would have said as he testified to he would have told them, don't talk to him, I'm going to drive up there and advise him. He would have still said I don't want to represent him in the future, but he would have been the person driving from Macomb County to the hospital, not the investigating officer. He would have gone to Mr. Grand as he testified and told him two things, do not talk to the police, which he'd been telling them all along, and number two, I don't want to represent you, but I'm going to get you a new attorney, and then listen to your new attorney. So don't do anything until you have new counsel. Had that happened, this statement never would have been made. The Constitution protects the right to enforce the agreement that you'll speak to counsel, forget these circumstances where counsel resigns, what, are we talking, I mean, Miranda, the requirements of Miranda and Edwards were met here, were they not? Post-breach of the agreement, yes. But I mean, so your only issue is you said you'd call counsel and you didn't, but they met, they complied with Miranda and Edwards. The calling of counsel, obviously we don't even think about counsel having resigned, maybe, let's think about it that way. That's your only issue here, and what part of the Constitution does that violate? Let me start with one thing. The agreement in this case was not between Captain Wickersham and Mr. Grand. They are not parties, they have no interest in this case. The agreement in this case was between the parties, the people of the state of Michigan, represented by Captain Wickersham, and Stephen Grand, represented by David Grand. That was the agreement. There's no personal, they have no personal interest. The agreement was made by the police to Mr. Grand, through his attorney, that we will not interrogate you without notice to your counsel. That agreement was breached, because even if Mr. Grand... I'm still wondering what, where's the sin in that, the constitutional sin? The sin in that is the same sin that was in Brewer. In Brewer, the police officers knew there was an agreement between the police and the attorneys and the defendant that he would not be interrogated during the car ride between the two cities in Iowa. And they breached that agreement by interrogating him. The U.S. Supreme Court first had to decide what they called the Christian burial speech was interrogation, and they did, and then they had to decide whether or not the fact that the defendant responded to the interrogation, which normally can be found to be an implicit waiver of the Fifth Amendment rights, was not in this case. And the reason they found that the response to the interrogation was not a valid waiver was that, in fact, the police officers would engage in misconduct by even attempting to interrogate him. Do you have any cases with respect to the way you put it as an agreement with a suspect defendant fugitive, to which he's never any part? That is, you have a lawyer saying, I represent this guy who obviously, there was no such agreement at the subsequent to the crime, where he isn't saying that I saw him after the crime. He's saying, I generally represent him, I guess, and I want to make a deal with you. This agreement, this agreement between the police and Mr. Grant, had been in effect from the beginning. This wasn't an agreement that they entered only after he became a fugitive. This had been the agreement between the police and Mr. Grant from the minute he became a suspect in the case. From the minute he notified the police that his wife was missing and they suspected him. This was not something that came up at the last minute. Did you say, Grime represents me? I thought Grime was... him from the first minute after they suspected him. Mr. Grime had been on this case. This was several weeks after the... Your case in Brewer is that the Sixth Amendment right to counsel had attached in Brewer. Yes, not here. Not so here. Not here. But the Fifth Amendment right to counsel... The only issue here is... Well, in the Brewer case, even though they talked about it in the context of the Sixth Amendment, understand, he was in custody subjected to interrogation and under Miranda, the Fifth Amendment right to counsel existed so extensively. We disagree about that. Well... The courts was clear about it. It wasn't about the agreement. The courts was pretty clear in saying, we're not saying it was the agreement. It was his Sixth Amendment rights had attached. They had attached and they argued that he had not validly waived those by responding to the interrogation. But the problem in the whole case was the interrogation was impermissible police conduct because there was an agreement, we will not interrogate you. I mean, there can't be any other way to view that. I mean, if there was no restriction on the police from interrogating the defendant in Brewer at any point in time, even though the Sixth Amendment right to counsel, the fact that they interrogated him and he responded, the court would have said, that's okay. There might have been a Fifth Amendment problem because they didn't meet his Miranda rights. But the Sixth Amendment right to counsel, you couldn't waive implicitly. But the problem in Brewer is the police officers knew they couldn't resist saying something to him, trying to get him to talk. The police in this case knew. They knew they couldn't talk to Mr. Grant. And they only decided, they had an officer up there sitting in the emergency room with him, an officer from Macomb County, sitting in the emergency room with him for the entire day. And under orders, do not question him. Do not interrogate him. We can't. And then they sat in their offices discussing, when are we going to call Mr. Grimes? Knowing that they had obligated to do that, and only when someone walked in and said, hey, turn on the TV, he's resigning, that they unilaterally decide, this agreement that we're not going to interrogate him is over. But that's a crucial point for me in the sense that when these cases are argued before us, we can't overlook the fact that the ADEPA standard applies. And that's a tough hurdle to get over. Absolutely. And so you're describing a situation that it seems to me is less than clear as far as evaluating what the state court did in terms of the way we review that action under ADEPA. I understand it's a high standard. One I teach appellate practice at University of Michigan Law School. And what I tell my students is anytime you do an argument, you not only tell the court what was done wrong, you tell the court what should have been done. In this case, what should have happened is that when they saw Mr. Grimes attempting to resign unethically, I might add, on TV, what they should have done? They should have called him and said, Mr. Grimes, I know you don't know this yet because we haven't called you, but we just saw you on TV. Mr. Grimes, in fact, is in custody. He, in fact, is available to consult with you. So maybe you might want to rethink making this statement. What do you want us to do now? And I guarantee you Mr. Grimes would have said, do not interrogate my client. And this never would have happened. That's the point here. What happened after the fact was done right. What happened before the fact is where the problem is. Your statement about something like they were sitting around deciding whether they should call or when they should call Grimes, who are the they? Is this Budznowski and Berger? No, it was Captain Wickersham and other people. I think it might have been Budznowski. I don't remember off the top of my head who was there, but they were in the police station deciding what they were going to do. Police station, not in the hospital? No, no, no. They were back here in Macomb County. Captain Wickersham never left. They sent the main investigating officer up there. So in your view, the sort of defalcation here is not by any of the officers up in the hospital, it's by Wickersham and his people? Oh no, not the people at the hospital. They were just acting under orders from Wickersham and the other people, the main people down here. Okay, you'll have your time. Thank you. Good morning, may it please the Court. Bruce Edwards, Michigan Assistant Attorney General on behalf of the Warden. As Judge Guy mentioned, this case is controlled by IDPA and it's the state's position that the Michigan Court of Appeals' refusal to confession was properly admitted was not contrary to any U.S. Supreme Court case. No extreme malfunction occurred here. There's two different ways you could go about resolving this case. You could find, number one, there wasn't in fact no violation of the agreement itself. That's what the state court found and the magistrate judge in his report and recommendation said that was not an unreasonable determination based on the testimony. The reason there was no violation is the agreement had two parts. When the guy's arrested, we'll let you know and we won't question him until you have a chance to talk to him. And here, they never questioned him until Grime had resigned. Now, keep in mind, he's arrested at 630 in the morning, four hours north, way northern Michigan. He's found barefoot in the park, hypothermia, possible frostbite. He's taken to the hospital. He was at a press conference at 9 a.m. and said, I'm no longer this man's attorney. So eventually, they get the guy out of ICU. They've decided, you know, treated him whatever way they can. And somebody said, did you want to make a statement? And that's when he says, I want to talk to Grime. And then they reasonably told him, well, he was just on TV and said that he's not your lawyer anymore. Here's a phone book. Would you like to contact a different attorney? This was not police misconduct in the advantage of a mental hospital patient who's escaped, who has, he's very religious and they use psychology on him in order to get him to spill the beans, as it were. Now, counsels, you know, only case that he's relying on is Brewer v. Williams. But there was no reason that, no, there was no reason why Grimes couldn't still have been called. He could have been, that's correct. Yeah, but they offered him a phone book and a phone. Right. To choose another lawyer. Or he could have called Grimes himself and he's offered a telephone. What do you mean you resigned? You're my lawyer, you can't resign. Exactly. Thank you. Now, counsel's arguing that, you know, Brewer's not complied with. But when counsel filed an application for leave to appeal in the Michigan Supreme Court, this is what he said. Mr. Grant acknowledges this case presents a unique situation with no precedent exactly on point. And then when he filed a habeas petition, they turned around and said, oh, this is just like Brewer v. Williams. But they didn't argue that when it was in front of the Michigan Supreme Court. So, first off, I think there's a strong argument the agreement wasn't even violated. But assuming arguendo that it was, this court can easily distinguish the Brewer case. There was, there was a Sixth Amendment right of counsel that existed in that case. The two different attorneys, one at one end of the car trip, one at the other end of the car trip. In our case, there was no Sixth Amendment right to counsel. There was a Fifth Amendment right to counsel. But the two Fifth Amendment right to counsel cases were complied with, counsel acknowledges. Miranda and Edwards v. Arizona were complied with. And Brewer is not a Fifth Amendment case. So there's really no U.S. Supreme Court case that addresses this kind of a factual situation. So, the Michigan Court of Appeals wasn't obligated to say, oh, we're going to take a Sixth Amendment case and apply it to a Fifth Amendment case. And the Sixth Circuit has said there's no, you can't break new ground in habeas cases. So there just wasn't a Brewer type scenario. The police went out of their way to try to help the defendant get a different attorney. They weren't trying to get a confession out of him as soon as possible. And one other minor point is that, you know, the defendant was charged with first degree murder and was convicted of second degree murder. And in the opening statement, counsel for the defendant said the only question is what kind of homicide occurred here. Well, in Michigan, you have first degree murder, second degree murder, and manslaughter. So best case scenario for Grant was the jury would have convicted him of manslaughter. But in a best case for the prosecutor, we have first degree murder. They found second degree murder. And it's arguable that his own confession helped him be convicted of second degree murder instead of first degree murder. If that's the case, then the admission helped him and it didn't hurt him by any stretch. And finally, if you read Brewer, the holding does not depend on the police breach of an agreement. That is not the basis of the holding in the Brewer case. Instead, it's because his Sixth Amendment right to counsel had been violated by using psychology on this mentally troubled person who was very religious that they had sort of coerced him or tricked him into confessing. Nothing like that happened here in the slightest. And Brewer certainly does not establish that once counsel strikes a no interrogation agreement with the police that the suspect cannot waive his right to counsel thereafter. Counsel, excuse me, Mr. Grant wanted to talk. Two different police officers and a nurse said, I can't talk to you. He wanted to talk to them. And they said, no, no, no, you'll have to talk to the officer in charge. And then the officer in charge drives four hours north. And then Mr. Brewer, who wanted, excuse me, Mr. Grant, wanted to confess. He then told his story. The officer in charge now is who? Is this Wickersham or is this? I don't remember. Brzezinski. Brzezinski. Brzezinski. But he's the one that drove four hours north. Nobody else was going to talk to him. He wasn't there. That's right. He was down in Macomb County, not in northern Michigan. So there's a point at which Brzezinski and Brewer are the two officers involved. Is that right? Yes. And there was a nurse. And he wanted to make a statement to all three of them. And all three of them said, no, if you want to talk, you've got to talk to the officer in charge. He gets on the phone, talks to the officer in charge. The officer in charge drives four hours. During that period of time he doesn't change his mind. And then he's given his Morano rights. He signs them all the way. And then he gives his confession. He wanted to confess. And the police really didn't engage in any misconduct. Brewer is clearly distinguishable. It's a Sixth Amendment case, not a Fifth Amendment case. And it doesn't turn on the violation of an agreement by the police. So the state would ask this court to find that the district court properly analyzed this case. Your adversary, toward the end there, we sort of emphasized that it was Wickersham who, in his view, made the wrong decision not to call a grime, I guess, at 6.30 or 7.00 or 7.30. Wickersham deposed. Do you have any view on that argument? Well, there was the evidentiary hearing. I don't recall, to be honest, Your Honor, what he said in that particular reason. But the point is, two-part agreement. We'll let you know when he's arrested and we won't question him without you being there. And they didn't question him until many hours after Grime had resigned and said, I'm no longer representing this fellow. And even then they didn't try to take advantage of it and say, oh, your lawyer resigned. Okay, talk to me right now. No, they made him wait four more hours so the officer in charge could drive up. There's just no police misconduct. There's no violation of the agreement. When you consider that the agreement had two parts and the refusal to grant or to suppress the confession was not contrary to any U.S. Supreme Court case. So I'd ask this Court to affirm the denial of habeas relief. If there are no more questions, I'll sit down early. Thank you, counsel. Thank you. Two minutes for rebuttal. Well, my opponent said there were two parts of this agreement. But the facts show that both were breached. They didn't contact Mr. Grant was in custody. And they interrogated him without Mr. Grime being present. So what part of the agreement was fulfilled? There was no exits in circumstances here. We talk about the time factor. This was weeks after the homicide. The body parts had been recovered. There was no urgent need to interrogate Mr. Grant. So this whole thing about a couple hours and how much time he was in the emergency room, that's irrelevant. All they had to do was take a two-minute phone call. How many people wouldn't speak to him? Three people, two officers and a nurse would not breach, so-called breach the agreement? And did your client waive? Eventually he did. Understand this scenario. If he really wanted to confess, and they read him his Miranda rights, when they first went to him, if he really wanted to confess, and they walked into him and said, do you want to talk to us, he would have said, yes, I'll confess. But he said, I want to speak to my attorney. That's not a person who is dying to confess. You see that problem, don't you, counsel, that he had an opportunity to call his attorney. Yes, he did. He didn't do it. He didn't do it. I don't think that's the point. He raised his hand and said, I'll talk. As I said, the error in this case did not occur at the hospital. Everything the police did at the hospital was fine. I've never claimed that any of the police officers up there did anything wrong. They were under orders from their superiors back in Macomb County to do exactly this. But none of those events would have occurred at all had Captain Wickersham taken two minutes to call Mr. Grime, either before or after this alleged resignation, and said, you should know your client's been in custody for three hours. Because at that point, everything would have stopped. Everything would have been different. Because Mr. Grime would not have resigned. In fact, he didn't resign until two weeks later. He didn't even talk to his clients for two weeks after that. In fact, the day after this alleged resignation, they were still faxing him documents in the case. If they thought he wasn't the attorney, why are they doing that? He would have told them, as he testified to, and as Captain Wickersham testified to at the hearing, he knew he was in breach. He knew the agreement was there. He never disagreed they had an obligation to do that. He never gave any explanation other than, we just hadn't gotten around to it yet. Mr. Grime would not have resigned. He would have driven the four hours. Not Sergeant Budinsky. He would have talked to Mr. Grant. And he would have very likely convinced Mr. Grant that even though you rejected my advice in the past, that was at a point when Mr. Grant was still trying to lie to the police and avoid suspicion. He was in a 180 degree different situation here. He knew the body had been found. He knew what had happened. He knew that they knew about it. I presume that Mr. Grime would have gone up to him and said, no way do you speak to the police. I don't want to represent you anymore. No requirement to have to. But I'm going to get you new counsel. Everything that happened in the hospital would not have happened but for the police, Captain Wickersham, intentionally, knowingly and voluntarily breaching the agreement to talk to Mr. Grime. That's where the problem is here. Thank you.